IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANGEL FLORES, #362446, #3534316, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX-16-2963 |
| WESTERN CORRECTIONAL INSTITUTION WARDEN RICHARD J. GRAHAM, JR., ASS'T WARDEN DENISE GELSINGER, BRADLEY O. BUTLER, Security Chief, HALL, 4-12 Shift Lieutenant, SHIMKO, Intelligence Lieutenant, A. CARTWRIGHT II, Administrative Remedy Procedure Coordinator, HUMBERTSON, Administrative Segregation Case Manager COMMISSIONER OF CORRECTION, SECRETARY, Department of Public Safety and Correctional Services, | * * * * * * | |
| Defendants. | * | |

*****

**MEMORANDUM OPINION**

Pending before the Court is a motion to dismiss, or, in the alternative, motion for summary judgment filed by Defendants Western Correctional Institution ("WCI"), Warden Richard Graham, Assistant Warden Denise Gelsinger, Security Chief Bradley Butler, Lt. Allen Hall, Lt. Jeffrey C. Shimko, Salem Humbertson, CO II Alicia Cartwright, and the Secretary for the Department of Public Safety and Correctional Services ("DPSCS") (ECF No. 10). Plaintiff Angel Flores filed a cross-motion for summary judgment (ECF No. 14). The issues are fully briefed and the Court now rules pursuant to Local Rule 105.6 because no hearing is necessary.

1

For the reasons stated below, Defendants' motion will be granted in part and denied in part. Plaintiff's motion is denied.

**I      BACKGROUND**

On February 7, 2016, Flores was attacked by another inmate while serving his prison sentence at the Western Correctional Institute. He was treated for injuries to his face, forehead, and neck and placed on administrative segregation pending investigation of the incident "Per 4-12 shift Lieutenant (?. Hall) and Intelligence Lieutenant (?. Shimko)." ECF No. 1 at 5.[1] Flores could not immediately identify his attacker, but video footage reviewed by Lt. Shimko and another prison official identified the attacker as James Morgan. *See* ECF No. 1-2 at 4; ECF No. 14-1 at 15. Flores's file was never updated to reflect the attack. *See* Compl., ECF No. 1 at 7. Flores was placed in administrative segregation following the attack. *See id.* at 5; *see also* ECF No. 10-2 at 3.

On February 22, 2016 and March 1, 2016, Flores filed Administrative Remedy Procedure (ARP) requests seeking to be released from administrative segregation into the general population. ECF No. 10-2 at 6–7, 8–9. Specifically, Flores complained that he was entitled to be present at a hearing regarding his segregated status and that he had not been afforded such a hearing. He requested that an "ICC representative" attend his next administrative review. *Id.* at 9. Flores' ARPs were dismissed on the ground that housing determinations concern case management decisions that are not covered by the ARP process. *Id.* at 6, 8.[2]

---

[1] Flores includes with Lieutenant Hall and Lieutenant Shimko's names question marks and periods without explanation. *See, e.g.*, ECF No. 1 at 5–7.

[2] *See Aurel v. Mailroom North Branch*, No. ELH-14-2813, 2016 WL 3957647 at *8 (D. Md. July 21, 2016) (noting that the ARP process does not apply to case management decisions, which are to be directly grieved to the Inmate Grievance Office and citing DPSCS Executive Directive OPS.185.0002.05F(1)).

On May 4, 2016, Defendant Humbertson, the case manager for Flores' housing unit, met with Flores for a "monthly admin seg [sic] review." At that meeting, Flores signed a body waiver wherein he acknowledged that he did "not have any known enemies at WCI and feel[s he] can be safely housed in general population at this time."[3] ECF No. 10-2 at 5; *see also id.* at 12. According to Flores, Defendant Humbertson told him that he would email the investigating officers (Defendants Hall and Shimko) and the warden, assistant warden, and security chief regarding Flores's pending return to the general prison population. Compl, ECF No. 1 at 5–6. Humbertson allegedly also said that if Flores did not "hear anything" by the following day, it could mean that his case was still under investigation. *Id.* at 5; *see also* ECF No. 10-2 at 12.

Two weeks later, Flores was still in administrative segregation and had not received a reply from Defendants Hall or Shimko. As such, he filed another ARP on May 18, 2016, "ARP WCI-1114-16", seeking to recant his body waiver. He noted no change in his housing status and no updates regarding the investigation of the February 7th attack. ARP WCI-1114-16, ECF No. 1-1. Flores requested to be assigned to a single cell and placed on recreation alone status until he received written assurance from Defendants Hall and Shimko that he was not at risk for further harm after the initial attack. *Id.* at 2–3. Defendant Cartwright dismissed this ARP the day after it was filed, again on the grounds that housing determinations are a matter of case management and cannot be properly challenged through the Administrative Remedy Procedure. *Id.* at 2. Defendant Humbertson claims that he never learned of Flores' desire to recant his body waiver. ECF No. 10-2 at 16.[4]

On May 21, 2016, Flores was returned to the general prison population and, notably, was housed on the same tier as James Morgan, the inmate who had attacked him on February 7, 2016.

---

[3] The record contains no information about an April review between Defendant Humbertson and Flores.

[4] The Information Report Form containing Humbertson's statement was not signed under oath.

3

Within an hour of Flores' return, Morgan and three other inmates stabbed Flores. Compl., ECF No. 1 at 6. Flores' injuries included a "large laceration about 10 inches long with multiple puncture wounds to the same area," bruises, and several stab wounds. *See* Medical Record, ECF No. 14-8 at 3.

After the May 21st attack, four inmates (Grant Holley, James Morgan, Jerrod Ward, and Raymond Murray) were thereafter identified as Flores' "enemies" in the DPSCS database for security reasons. Winters Decl., ECF No. 10-2 at 2. No such similar notation had been made to Flores' file after the February 7th attack. Flores alleges, without citing a particular policy, that this omission is contrary to prison protocol. ECF No. 10-2 at 13. Sgt. Broadwater, however, told Flores that "someone didn't do their job" by failing to place a staff alert in Flores' inmate file regarding the February 7th attack. Compl., ECF No. 1 at 7. No information exists as to why Plaintiff was returned to general population or the reasons for the delay in his return. Winters Decl., ECF No. 10-2 at 1.

On May 22, 2016, the day after the second attack, Defendant Shimko met with Flores for the first time. According to Flores, Shimko acknowledged at that meeting that Flores should not have been returned to the general prison population. Shimko further noted that he would have not allowed Flores' return to the general population had he known of the impending move from administrative segregation. Compl., ECF No. 1 at 7. Flores was again placed on administrative segregation pending investigation of the second attack.

After the May 21st attack, Flores filed a series of ARPs and inmate grievances, asserting that the institution had failed to review properly his previous ARPs, especially the one recanting the body waiver. *See* ECF No. 1-2 at 1; *see also* ECF No. 10-2 at 10–11. These ARPs were, again, procedurally dismissed, *See* ECF No. 14-6 at 2, 8, noting that Flores signed the body

4

waiver voluntarily, did not indicate that the ARP was an "emergency," and did not contact his case manager to request retraction of the body waiver. *Id.* at 8.

Flores then wrote the Executive Director of the Inmate Grievance Office ("IGO") to explain that he did not check the "emergency" box on the ARP because he considered himself safe while in administrative segregation, and that his primary purpose in filing the ARPs was to receive assurance that he was not in danger of further attack. *See* ECF No. 1-3 at 5; *see also* ECF No. 1-2 at 10. After Flores filed the IGO letter, he was transferred from WCI to Jessup Correctional Institution. The IGO therefore dismissed the letter as moot on August 12, 2016, describing Flores' concern as being that he was "improperly placed on Administrative Segregation." ECF No. 14-4 at 1.

Flores filed the instant action on August 24, 2016 after exhausting his administrative remedies and notifying the Maryland State Treasury of his intent to bring suit. *See* Compl., ECF No. 1; ECF No. 1-4 at 2. Flores alleges that Defendants violated his rights under the Eighth and Fourteenth Amendments of the United States Constitution. Specifically, Flores asserts that the Defendants failed to afford him a hearing while he was on administrative segregation and subsequently failed to protect him from other violent inmates. He seeks compensatory damages in the amount of $160,000 against each Defendant, jointly and severally, and punitive damages in the amount of $60,000 against each Defendant. *Id.* at 4.

I. **STANDARD OF REVIEW**

Defendants' motion is styled as a motion to dismiss, or in the alternative, for summary judgment, and they have attached additional materials to it. This implicates the court's authority under Rule 12(d) of the Federal Rules of Civil Procedure to convert a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment. *See Bosiger v. U.S. Airways*, 510 F.3d

5

442, 450 (4th Cir. 2007); *Kensington Vol. Fire Dep't., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011). When a defendant attaches documents to a motion to dismiss that are not "integral to the complaint," the Court cannot consider the documents unless it treats the motion as one for summary judgment. *See CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); Fed. R. Civ. P. 12(d). Before doing so, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* Flores has been put on notice by the Defendants styling the motion as one for summary judgment and attaching additional materials. In fact, Flores filed his own cross-motion for summary judgment, thereby acknowledging his awareness and acquiescence to the same. The Court, therefore, will treat the motions as ones for summary judgment. *See Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998).

Summary judgment is governed by Fed. R. Civ. P. 56(a) which provides that "the court shall grant summary judgment if the movant shows that there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine issue of material fact*." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).

This court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness's credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002). A court must also, however, abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewett v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993) and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

The parties filed cross-motions for summary judgment. Each motion is considered individually, and the facts relevant to each are viewed in the light most favorable to the non-movant." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003).

## II. ANALYSIS

### A. Defendants' Motion for Summary Judgment

#### 1. Eleventh Amendment Sovereign Immunity

At the outset, the individual Defendants argue that they are immune from suit pursuant to the Eleventh Amendment of the United States Constitution. ECF No. 10-1 at 10. Defendants are partially correct. Under the Eleventh Amendment, states as well as their agencies and departments are immune from suits in federal court brought by their citizens or the citizens of another state. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989). While states can consent to such suits, and while the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. *See Carter v. Mayor and*

*City Council of Baltimore*, 164 F. Supp. 2d 509, 514 (D. Md. 2001), *vacated on other grounds*, 39 F. App'x 930; *Hopkins v. Baltimore City Det. Ctr.*, 2016 WL 470821 (D. Md. 2016).

With regard to individual Defendants, the Eleventh Amendment immunity analysis turns on whether the defendant is sued in her individual or official capacity. Suits against state defendants in their official capacities are construed as suits against the office itself, and so sovereign immunity precludes suit. *Will*, 491 U.S. at 71. When a defendant is sued in her personal capacity, however, the defendant enjoys no Eleventh Amendment protection. *Hafer v. Melo*, 502 U.S. 21, 22 (1991).

The Fourth Circuit Court of Appeals counsels that the Court must look to the substance of the pleadings to determine whether a defendant is sued in her individual or official capacity for Eleventh Amendment immunity purposes. *Biggs v. Meadows*, 66 F.3d 56, 58 (4th Cir. 1995). The factors include the relief requested, plaintiff's failure to make allegations regarding official customs or policies, and the nature of the defenses. *Id.* at 61.

Here, Flores' complaint demonstrates that he has sued the individual defendants in their individual capacities. Flores, for example, has not alleged that Defendants' actions were pursuant to a custom or policy as is required to sue individuals in their official capacities. Flores has also requested the kind of damages available only to defendants sued in their individual capacities, to include punitive damages. Compl., ECF No. 1 at 4. Defendants also claim that they are entitled qualified immunity, ECF No. 10-1 at 11, which is only available to defendants sued in their individual capacities. *Biggs*, 66 F.3d at 61 (citing *Kentucky v. Graham*, 473 U.S. 159, 167 (1985)). Plaintiff's claims, therefore, are not barred by Eleventh Amendment immunity. To the extent that Flores may be also suing Defendants in their official capacities, those claims are hereby dismissed. *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974) (citing *Ford Motor Co. v.*

*Dep't of Treasury*, 323 U.S. 459 (1945) (holding that where recovery must be paid from public funds in the state treasury, a suit is barred by the Eleventh Amendment)).

**2.      Section 1983 Claims**

Defendants next argue that WCI cannot be sued under 42 U.S.C. § 1983 for direct violations of Flores' constitutional rights because WCI is not a "person" for the purposes of § 1983 liability. Defendant WCI is correct. *See Preval v. Reno*, 57 F. Supp. 2d 307, 310 (E.D. Va. 1999) (holding that jails are not "persons" amenable to suit under 42 U.S.C. § 1983), *aff'd in part and vacated in part on other grounds*, No. 99-6950, 2000 WL 20591 (4th Cir. 2000); *see also Allison v. California Adult Auth.*, 419 F.2d 822, 823 (9th Cir. 1969) (holding that a prison was not a "person" under 42 U.S.C. § 1983). Accordingly, the claims against WCI are dismissed.

Similarly, individual Defendants Richard J. Graham Jr., Denise Gelsinger, Bradley O. Butler, argue that Flores has failed to plead sufficient personal involvement to sustain a claim against them under § 1983. ECF No. 14-1 at 8. Flores pleads only that their signatures appear on certain forms but do not identify any forms within the record to support his claim. Construing the facts in the light most favorable to Flores, the Court identifies one ARP denial signed by Defendant Gelsinger, but that denial postdated the second attack and so has no relation to Flores' allegations that Defendants failed to keep him safe by releasing him to general population. Thus, summary judgment must be granted as to these Defendants.

In a last attempt to save his claims against these defendants, Flores asserts that they are liable under a theory of respondeat superior. *Id.* at 7. Respondeat superior liability, however, is not available for §1983 claims. *Kitchen v. Ickes*, 116 F. Supp. 3d 613, 629 (D. Md. 2015), *aff'd*, 644 F. App'x 243 (4th Cir. 2016), *cert. denied*, 137 S. Ct. 573 (2016). Accordingly,

9

Plaintiff's claims against Richard J. Graham Jr., Denise Gelsinger, Bradley O. Butler, the Commissioner of Correction, and the Secretary of the Department of Public Safety must fail.

3.  **Fourteenth Amendment Due Process claims**

Flores challenges in passing that the ARP process was constitutionally deficient. Compl. ECF No. 14-1 at 3–4. Specifically, he contends that he was improperly denied a hearing concerning his administrative segregation status and the ARPs he filed before May 21st, *id.* at 15, and that the ARP recanting his body waiver was "not properly investigated." *Id.* at 4. Defendants correctly argue that Flores' bare bones allegation does not amount to a proper constitutional claim or violation of federal law. This is so because an inmate maintains no independent constitutional entitlement to participate in a prison grievance process. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Accordingly, the Defendants' motion for summary judgment on Flores' Fourteenth Amendment due process claim is granted.

4.  **Eighth Amendment Failure to Protect**

As to Plaintiff's remaining Eighth Amendment failure to protect claim against Defendants Humbertson, Shimko, Hall, and Cartwright, Defendants assert that Flores' claim does not survive because the evidence construed most favorably to Flores does not demonstrate that these Defendants' actions amounted to deliberate indifference to his health and safety. The Court is not persuaded.

The Eighth Amendment provides a right to be free from cruel and unusual punishment, *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Helling v. McKinney*, 509 U.S. 25, 31 (1993)), which includes protection "from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833. This does not mean that every injury suffered by a prisoner at the hands of another inmate amounts to an Eighth Amendment violation. *Id.* at 834. However, where an inmate

suffers an objectively serious deprivation of rights and the official allegedly responsible for the deprivation has acted with "deliberate indifference" to inmate health or safety, an Eighth Amendment claim shall lie. *Id.* at 826, 834. An objectively serious deprivation of rights includes placing the Defendant at risk of significant physical or emotional injuries. *See Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014). In making this determination, the Court should "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

Defendants do not challenge that Flores's stab wounds, lacerations, and contusions constitute "serious deprivations" of health and safety for Eighth Amendment purposes. Rather, Defendants exclusively argue that Defendants' conduct as a matter of law does not amount to deliberate indifference. "Deliberate indifference" requires subjective awareness of the risk presented to the Plaintiff. *Farmer*, 511 U.S. at 829. To be liable for an Eighth Amendment violation for failure to protect, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Therefore, an official's *negligent* failure to protect an inmate from attack by another inmate does not constitute an Eighth Amendment claim. *Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987) (emphasis added). Officials may not however simply skirt liability by asserting that they failed to perceive a risk where "it is shown, for example, that [they] merely refused to verify 'underlying facts that [they] strongly suspected to be true,' 'or that [they] declined to confirm inferences of risk that [they] strongly suspected to exist.'" *Makdessi v. Fields*, 789 F.3d 126, 133–34 (4th Cir. 2015) (quoting *Brice v. Virginia Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995)). Whether a defendant was deliberately indifferent is a question of

11

fact subject to demonstration "in the usual ways including inference from circumstantial evidence" so that "a factfinder may conclude that [the official] knew of a substantial risk from the very fact that the risk was obvious." *Raynor v. Pugh*, 817 F.3d 123, 128 (quoting *Farmer*, 511 U.S. at 842).

When viewed in the light most favorable to Flores, genuine disputes of material fact exist as to whether Defendants' conduct amounts to deliberate indifference. Flores points first to evidence that Defendants knew James Morgan had attacked Flores on February 7th, and thus posed a specific and serious risk to Flores' health and safety, so much so that they segregated Flores from the general population as a result of that risk. Indeed, it was Defendant Shimko who initially identified Morgan as the inmate who stabbed Flores on February 7th, and Shimko and Hall were the officers investigating the attack. Shimko admitted as much when he noted that Flores should not have been released into the general population without meeting with Shimko first. Compl., ECF No. 1 at 7. Yet neither a "staff alert" nor any of the February 7th assailants' names were added to Flores' file between the February 7th and May 21st attacks.

Flores also argues that the May 18th ARP recanting his body waiver further alerted Defendants regarding the danger posed by returning him to general population. ECF No. 1-1 at 3. Whether the ARP was the "correct" way to notify Defendants of this concern is irrelevant as to whether it put Defendants on notice of the risk itself. Flores aptly points out that, at the very least, the ARP constitutes specific notice to Defendants that they should not put Flores on unprotected on the same cell block as Morgan. Lastly, Flores asserts that his continued segregation alone demonstrates Defendants awareness of the severity of the February 7th attack and the risk that would be presented by returning him to the general prison population. *Id.* at 2–3.

Defendants claim that the evidence available shows their *lack* of knowledge of a specific risk to Flores' safety. They point to Shimko's statement that he would have intervened "had he known" Flores was being removed from administrative segregation and Humbertson's statement that he was never notified about Flores' body waiver recant. ECF No. 10-1 at 7; ECF No. 10-2 at 16. Furthermore, they argue that Flores' May 18th ARP requesting a guarantee of safety was insufficient to put them on proper notice because an ARP is not the proper channel for challenging one's housing status, because "recanting the waiver by itself falls short of indicating a specific risk," and because Flores did not check the available "emergency" box on the to indicate the seriousness of his concern. ECF No. 10-1 at 8. But while this may provide fodder for defense arguments at trial, it does not compel granting summary judgment on their behalf. When viewing the facts most favorably to Flores, a reasonable fact-finder could conclude that Defendants' return of Flores to general population amounted to deliberate indifference to his health and safety. Defendants' motion for summary judgment is therefore denied as to Defendants Shimko, Hall, Cartwright, and Humbertson and the Eighth Amendment claims.

2. **Qualified Immunity**

Defendants lastly argue that, in the event that some or all of Flores' constitutional claims survive summary judgment, they are nonetheless of qualifiedly immune from suit. This Court disagrees.

The doctrine of qualified immunity is designed to ensure that government officials performing discretionary functions can exercise their duties "free from the specter of endless and debilitating lawsuits." *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991). Without qualified immunity, a substantial risk exists that fear of personal liability and harassing litigation will "unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S.

635, 638 (1987). Government officials are thus entitled to qualified immunity for civil damages to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). *Accord Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992).

A defendant asserting qualified immunity must demonstrate first that facts established by the plaintiff make out a violation of a federal right; and second that the right had been "clearly established" at the time of defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts are free to reach either of these two prongs first in light of the circumstances of the case at hand. *Id.* at 236.

The "clearly established" prong "'turns on the "objective legal reasonableness" of the action, assessed in light of the legal rules that were "clearly established" at the time it was taken.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citation omitted)). In determining whether it was clearly established, the right must be defined at the appropriate level of specificity. *Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 773 (4th Cir. 2003) (citing *Wilson v. Layne*, 526 U.S. 603, 615). The exact conduct at issue need not have been held explicitly unlawful for the law governing an officer's actions to be clearly established; the correct analysis considers not only "specifically adjudicated rights, but those manifestly included within more general applications of the core constitutional principle involved." *Amaechi v. West*, 237 F.3d 356, 362–63 (4th Cir. 2001). "To be clearly established, a right must be sufficiently clear 'that every reasonable official would [have understood] that what he is doing violates that right.' In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate,'" *Reichle v. Howards*, 566 U.S. 658, 132 (2012) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 740

(2011) (some internal quotation marks and citations omitted)), such that the unlawfulness of the action must be apparent at the time of its occurrence. *Anderson*, 483 U.S. at 640.

On this point, the Court finds the Fourth Circuit Court of Appeals' recent decision in *Cox v. Quinn*, 828 F.3d 227 (4th Cir. 2016) instructive. In *Cox*, an inmate who was severely beaten by a fellow inmate while incarcerated filed suit against several prison officials alleging that they had been deliberately indifferent to a substantial risk to his safety, in violation of 42 U.S.C. § 1983 and the Eighth Amendment. The inmate repeatedly complained to jail officials that he was being threatened, harassed, and robbed by the group of inmates who ultimately orchestrated the beating. The prison officials defended, in part, on the ground that they were entitled to qualified immunity because reasonable correctional officers in the same circumstances would not have known that they had violated the inmate's clearly established rights. *Id.* at 234–35. The district court found that the officers were not entitled to qualified immunity because the duty of jail officials to protect prisoners from inmate violence had been clearly established as of April of 2011—the time when the inmate informed the prison officials of the harassment and when the retaliatory beating took place. *Id.* at 235. The Fourth Circuit agreed, reiterating that "[i]t has long been established that jail officials have a duty to protect inmates from a substantial and known risk of harm, including harm inflicted by other prisoners." *Cox*, 828 F.3d at 239 (citing *Farmer*, 511 U.S. at 833). ("[B]y 2011, we had made it clear that 'a prison official acts with deliberate indifference when he ignores repeated requests from a vulnerable inmate to be separated from a fellow inmate who has issued violent threats which the aggressor will likely carry out in the absence of official intervention.'") (quoting *Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 773 (4th Cir. 2003)).

Similarly here, Flores was attacked on February 7, 2016 by inmate James Morgan. Defendants were aware of this attack and appropriately placed Flores on administrative segregation while it was investigated. Over the next three months, Flores remained segregated from the general prison population. Flores also specifically discussed his wellbeing with Defendant Humbertson. After signing a body waiver to be released into the general population, Flores was told that he may continue to be kept in segregation if Defendants Hall and Shimko had continuing concerns about his safety. Flores did indeed remain segregated. Months later without any status updates, Flores became increasingly concerned that he would not actually be safe in the general prison population. He alerted Defendants of this concern by filing an ARP through which he recanted his body waiver. That ARP was summarily denied, and two days later. Despite Flores' pleas with Defendants to keep him segregated until they could guarantee his safety, Defendants returned Flores, without protection, to the same block as those that attacked him on February 7th. Accordingly, if a jury credits these facts, an objectively reasonable prison official would know these actions were unreasonable, ran afoul of clearly established law, and violated the rights "manifestly included within more general applications of the core constitutional principle" articulated in *Farmer*. *See Odum*, 349 F.3d at 773. Accordingly, Defendants are not entitled to qualified immunity.

**B.    Plaintiff's Motion for Summary Judgment**

Plaintiff argues in favor of summary judgment based on the same facts and issues this Court has already addressed, save one. Flores summarily refers to violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA") for the first time in his cross-motion for summary judgment, ECF No. 14-1 at 12. RLUIPA prohibits governments from implementing land use regulations that impose a "substantial burden" on religious exercise or that discriminate

against any religious assemblies or institutions on the basis of religious denomination. 42 U.S.C. § 2000cc(a)–(b)(2). Flores provides no facts to support a claim under this statute, and none are evident in the record. Additionally, Flores has not moved this Court to amend his complaint pursuant to Rule 15(a) to include a new claim. The claim is therefore not properly before the court and is dismissed without prejudice. *McDonald v. LG Electronics USA, Inc.*, 219 F. Supp. 3d 533, 541 (2016) (citing *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 (D. Md. 1997), *aff'd,* 141 F.3d 1162 (4th Cir. 1998) (holding that plaintiffs are "bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint.")). Plaintiff's motion for summary judgment is therefore denied.

### III. CONCLUSION

For these reasons, Flores' motion for summary judgment in opposition to defendants' motion to dismiss (ECF No. 14) is denied. Defendants' motion for summary judgment (ECF No. 10) is granted in part and denied in part. All claims against Defendants Western Correctional Institution, Graham, Gelsinger, Butler, Commissioner of Correction, and the Secretary of DPSCS are dismissed. Flores' due process and RLUIPA claims are dismissed. Defendants Hall, Shimko, Cartwright, and Humbertson's motion for summary judgment as to Flores' Eighth Amendment failure to protect claim is denied.

A separate order follows.

| 6/27/2017 | /S/ |
|---|---|
| Date | Paula Xinis |
| | United States District Judge |